UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| In re: | } | |
|---|---|---|
| | } | |
| Jeremy C. Schleicher, | } | Case No. 16-41667-JJR7 |
| | } | |

| Thompson Tractor Co., Inc. | } | |
|---|---|---|
| | } | |
| Plaintiff, | } | |
| v. | } | AP No. 18-40002-JJR |
| | } | |
| Jeremy C. Schleicher, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

### I - Introduction and Jurisdiction

This is a proceeding under Rule 7001(6) of the Federal Rules of Bankruptcy Procedure to determine the dischargeability of a debt Thompson Tractor Co., Inc. ("Thompson") alleged is owing by Jeremy C. Schleicher (the "Debtor") pursuant to his continuing guaranty of payment. The Debtor filed a petition for relief on October 10, 2016 under chapter 7 of the Bankruptcy Code, and later was granted a discharge pursuant to Code § 727.[1] The continuing guaranty was executed pre-petition, but the credit advances were made to the principal obligor post-petition.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), thus the

---

[1] 11 U.S.C. § 101, *et seq.*, and herein referred to as the "Code." The symbol "§" is a reference to a section or other subdivision of the Code.

court may enter a final order. Moreover, the parties agreed this is a core proceeding, and consented to the entry of final orders by this court.[2]

## II – Background and Findings

In April 2011, Dixie Logging Co. LLC ("Dixie") executed a Credit Application and Agreement (the "Credit Agreement")[3] in favor of Thompson in anticipation of Thompson extending credit to Dixie for equipment leases, parts, and repairs. Both before and after his bankruptcy the Debtor was Dixie's managing and controlling member.[4] On the reverse side of the Credit Agreement was a Continuing Guaranty (the "Guaranty") which was signed by the Debtor in consideration of "the extension of credit to" Dixie. The Guaranty purported to cover all present and future obligations owing from time to time by Dixie to Thompson. The Guaranty was unconditional and was to remain in effect until the Debtor's written notice of termination was accepted by Thompson. No such notice of termination was ever given by the Debtor.

According to his schedules, when the Debtor filed his chapter 7 petition he was indebted to Thompson for $138,057.69,[5] and there was no dispute that this pre-petition debt was discharged. However, post-petition, at the direction of the Debtor who continued to be Dixie's managing and controlling member, Dixie sought, and was extended credit from Thomson for equipment leases, parts and repairs that were completely independent from and unrelated to the prepetition

---

[2] Amended Report of the Parties' Planning Meeting, AP Doc. 28. A document filed in the adversary proceeding is referred to as an "AP Doc." and a document filed in the Debtor's bankruptcy case is referred to as a "BK Doc."

[3] AP Doc. 46, Ex. 1.A

[4] AP Doc. 48, p. 32.

[5] BK Doc. 32, p. 44. There was no indication whether this pre-petition indebtedness was owing under the Guaranty or by the Debtor as the principal obligor.

transactions. That post-petition extension of credit totaled $86,137.77, exclusive of interest and expenses, and remains unpaid.[6]

Thompson maintains that with respect to the post-petition credit extended to Dixie, the Guaranty survived the Debtor's bankruptcy and the post-petition guaranteed debt was not discharged. The Debtor argues that although the advances were made post-petition, they were nonetheless contingent and unliquidated pre-petition claims under the Guaranty, and therefore were discharged.

### III – Parties' Dispositive Motions and Standard

Thompson filed a motion for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, and the Debtor filed a motion for judgment on the pleadings pursuant to Rule 7012(c).[7] In its motion, Thompson asked the court to enter an order determining that the post-petition advances of credit to Dixie were guaranteed by the Debtor, and were not discharged in his bankruptcy. In his motion, the Debtor seeks an order determining that his obligations as guarantor were discharged notwithstanding that new credit advances were made post-petition. The facts as set out above are not in dispute and are discernable from the pleadings, the Debtor's responses to requests for admissions propounded by Thompson,[8] and the affidavit made by Thompson's Director of Credit and the exhibits thereto.[9] For the reasons that follow, the court will grant summary judgment in favor of Thompson and will deny the Debtor's motion.

---

[6] AP Doc. 46, Ex. 1.

[7] AP Docs. 44, 50.

[8] AP Doc. 48, p. 32.

[9] AP Doc. 46, p. 3.

3

A motion for summary judgment on the merits of the nondischargeability complaint is controlled by Bankruptcy Rule 7056, which provides that Rule 56 of the Fed. R. Civ. P. is applicable to bankruptcy adversary proceedings. The court may grant summary judgment to a moving party when that party demonstrates "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the merits of a motion for summary judgment, the court's role is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ. For Bibb Co.*, 495 F.3d 1306 (11th Cir. 2007). Similarly, in considering a motion for judgment on the pleadings under Bankruptcy Rule 7012, incorporating Fed. R. Civ. P. 12 (c), the court considers the pleadings, along with their exhibits.

> "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." [*quoting Cannon v. City of W. Palm Beach*, 250 F.3d 1299 1301 (11th Cir. 2001)]. In determining whether a party is entitled to judgment on the pleadings, [the court must] accept as true all material facts alleged in the non-moving party's pleading, and [the court must] view those facts in the light most favorable to the non-moving party. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998). If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied. *See Stanton v. Larsh,* 239 F.2d 104, 106 (5th Cir.1956).

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Because the court is considering the discovery responses and affidavit exhibits to the Plaintiff's motion for summary judgment in ruling on both that motion as well as the Defendant's motion for judgment on the pleadings, the motion for judgment on the pleadings is essentially converted to a competing motion for summary

4

Case 18-40002-JJR  Doc 62  Filed 11/07/18  Entered 11/07/18 11:46:57  Desc Main
Document  Page 4 of 8

judgment under Fed. R. Civ. P. 12(d). The parties agree that there are no material facts in dispute, as their motions demonstrate. The issue is purely a legal one.

IV – Arguments and Authorities

Code § 727(b) provides that "a discharge under . . . this section discharges the debtor from all debts that arose *before* the date of the order for relief [emphasis added]." "Debt" is defined in § 101(12) as "liability on a claim" and "claim" is broadly defined in § 101(5)(A) as a "right to payment, whether nor not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." When the Debtor filed for relief, there was no commitment by Thompson to make post-petition credit advances, and no obligation by Dixie to accept such advances. Thus, before the petition date, Thompson had no "right to payment" for post-petition advances because there was no post-petition debt, and there was no obligation for Thompson to make post-petition advances and no obligation for Dixie to request and accept such advances.

The Debtor argues that Dixie's post-petition debts were contingent and unliquidated claims under the Guaranty, and thus subject to discharge. According to the Debtor, those claims were contingent on Thompson extending post-petition credit to Dixie, and they were unliquidated because the amount of such credit, if any, had not been determined. But the Debtor cannot argue that Thompson had an obligation to made post-petition advances or that Dixie had the obligation to accept them if offered. Thus, before the Debtor filed his bankruptcy case, the post-petition extensions of credit were neither contingent nor unliquidated claims. They were not claims at all—not contingent, unliquidated, or any other kind of claim. There is nothing contingent or unliquidated about a debt that does not exist, especially where the creditor has no obligation to extend further credit and the borrower has no obligation to request and accept further extensions

5

of credit. Here, everything that happened post-petition was strictly voluntary by all parties. And critically, the post-petition debt could not have arisen unless the Debtor caused Dixie to request and accept the post-petition credit from Thompson. If Dixie had been under the control of someone other than the Debtor, or the Debtor had first notified Thompson of his intention to terminate the Guaranty, then the Debtor's argument might have more traction. But the Debtor was in complete control. He never attempted to terminate the Guaranty and Thompson had the right to continue to rely on the Guaranty when it made credit advances post-petition. Those advances constituted claims which, on the petition date, were non-existent and because they could only be incurred by Dixie at the Debtor's direction, should not be considered contingent or unliquidated. Additionally, because the Debtor controlled Dixie, and caused it to seek and accept post-petition credit advances, without first sending Thompson written notice that he was terminating the Guaranty, he is estopped from denying the continued enforceability of the Guaranty for post-petition advances.

The facts and issues in this matter are not unique. The case of *In re Jordan*, 2006 WL 1999117 (Bankr. M.D. Ala. 2006), is particularly on point factually. In that case, the debtor executed a continuing personal guaranty of the debts of a company owned entirely by her husband. She did not revoke the guaranty before she filed chapter 7 bankruptcy and received her discharge. Thereafter, several months post-petition, the principal obligor incurred debt to the creditor, defaulted, and the creditor sued the debtor in state court under the personal guaranty. The issue in the *Jordan* case, as in the instant case, "is whether the debtor's liability on the contingent claim arose when the guaranty agreement was executed . . . or when the loans were made to the principal obligor." *Id.* at *2. The court found the answer to that question by examining Alabama law regarding the nature of a continuing guaranty, under which each debt transaction between the principal obligor and the creditor creates a new contract between the guarantor and the creditor.

6

"Under a continuing guaranty, the guarantor's contingent liability arises at the time of the making of each guaranteed loan. Each loan transaction is considered a separate, unilateral contract. Hence, the contingent liability arises at the time of the loan as opposed to the time the guaranty is executed." *Id.* at *3. This court agrees with the *Jordan* court, and finds the facts in *Jordan* to be compellingly similar to the facts in the instant case. To the extent *In re Russo*, 494 B.R. 562 (Bankr. M.D. Fla. 2013) and the cases relied upon by the Debtor can be read as supporting the existence of a dischargeable contingent claim under a continuing guaranty even before the principal debt was in existence, this court disagrees and finds the *Jordan* rationale better reasoned and more persuasive. *See, e.g., In re Estes*, 415 B.R. 568, 577 (Bankr. N.D. Ala. 2009) (stating that whether contingent or noncontingent, a debt must be "actually owed" when the debtor filed bankruptcy in order to be dischargeable, discussing the issue in the context of veil-piercing under Alabama law); *Dulles Elec. & Sup. Corp. v. Shaffer (In re Shaffer)*, 585 B.R. 224 (Bankr. W.D. Va. 2018) (disagreeing with *Russo* and holding that a debtor's discharge did not discharge liability under a prepetition continuing guaranty for postpetition credit extensions); *In re Brand*, 2017 WL 4162248 (D. Md. 2017) (reversing bankruptcy court and holding that "the unpaid amounts arising from [the primary obligor's] post-petition purchase orders, even if owed by [the debtor] pursuant to her un-revoked pre-petition guaranty, were not pre-petition debts discharged through [the debtor's] bankruptcy"); *Wuthrich v. Amer Sports Winter & Outdoor Co.*, 2015 WL 1503424, *4-*5 (N.D. Cal. 2015) (debtor's obligation under prepetition continuing guaranty was not discharged as to postpetition obligations that did not exist when the case was filed, were not routinely occurring or predictable (such as a guaranty of a monthly rental obligation, for example), and where the so-called "contingency" of the claim "did not turn on events or actions of a third party" but was completely within the debtor's control); *In re Weeks*, 400 B.R. 117, 124 (Bankr. W.D.

Mich. 2009) (thoroughly examining the support on both sides and emphasizing that "no dischargeable 'claim' (*i.e.,* an enforceable obligation) can arise on account of a debtor's guaranty of future indebtedness until a new advance has in fact been made").

V - CONCLUSION

Accordingly, for the reasons stated above, the court will enter an order pursuant to Rule 7058 of the Federal Rules of Bankruptcy Procedure that conforms to this opinion, and thereby grant summary judgment in favor of Thompson and deny the Debtor's motion for judgment on the pleadings (treated as a motion for summary judgment).

Done this 7th day of November 2018.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE